UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-62511-CIV-DIMITROULEAS

LORIS B. RANGER and
GEORGE GORDON,

        Plaintiffs,

Vs.

WELLS FARGO BANK, N.A., d/b/a
AMERICA'S SERVICING COMPANY,
A Foreign Corporation,

        Defendant.
_____/

**WELLS FARGO'S MOTION TO DISMISS AMENDED
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

    Defendant, Wells Fargo Bank, N.A., d/b/a America's Servicing Company ("Defendant" or "Wells Fargo"), by and through its undersigned counsel and pursuant to the provisions of Fed. R. Civ. P. 12(b)(6), moves to dismiss the Amended Complaint for Damages filed by Plaintiffs, Loris B. Ranger and George Gordon ("Plaintiffs").

**I.**    **PRELIMINARY STATEMENT**

    Following the involuntary dismissal of a state court foreclosure proceeding brought by Wells Fargo, to be discussed more fully, *infra*, Plaintiffs have filed a separate suit for Wells Fargo's alleged violation of the Florida Consumer Collection Practices Act ("FCCPA"), violation of the Real Estate Settlement Procedures Act ("RESPA"), negligence, *per se*, and conversion. Plaintiffs' claims lack merit and, for a myriad of reasons which are more fully set forth below, this Court should dismiss Plaintiffs' Amended Complaint, with prejudice.

## II. BRIEF PROCEDURAL BACKGROUND

On or about November 11, 2005, Plaintiff, George Gordon, a single man,[1] executed a Note in favor of Fremont Investment & Loan ("Fremont"), and joined by Loris B. Ranger, a single woman,[2] executed a Mortgage in favor of Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Fremont, in the original principal amount of $550,000, in connection with the property located at 3640 S.W. 195th Avenue, Miramar, Florida 33029. *See* Am. Compl. [DE 44] at ¶ 4. The Mortgage was subsequently assigned to HSBC Bank USA, N.A., as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2006-HE1, Asset Backed Pass-Through Certificates ("HSBC Bank"), and Wells Fargo is servicing the loan on HSBC Bank's behalf. *See, generally, id.*

On or about September 5, 2012, Wells Fargo caused to be filed a foreclosure action in a case styled *HSBC Bank USA, N.A., as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2006-HE1, Asset Backed Pass-Through Certificates v. Loris B. Ranger, et al.,* Case No. 12-25007 CACE 11, Seventeenth Judicial Circuit of Florida (the "Foreclosure Action"), alleging a default date of January 1, 2012 and unpaid principal balance of $516,662.66. *See, generally, id.* at ¶ 8. During the pendency of the Foreclosure Action, Plaintiffs made numerous payments to Wells Fargo, which were placed in a suspense account. *Id.* at ¶ 46, 48. On or about December 31, 2013, Wells Fargo removed the funds placed in the suspense account and applied them as payments, thereby advancing the due date on the Loan from January 1, 2012 to February 1, 2013.

On or about October 29, 2014, Plaintiffs, through counsel, sent Wells Fargo a Qualified Written Request (the "2014 QWR"), containing both a request for information and a notice of

---

[1] Upon information and belief, Plaintiffs are now married.
[2] *See* fn 1 *supra.*

2

error, pursuant to Regulation X, 12 CFR § 1024. *Id*. at ¶ 10. In the 2014 QWR, a copy of which is attached (*sans* exhibit) as **Exhibit A,** [3] Plaintiffs disputed that the loan was due for the January 1, 2012 payment, as they had allegedly been making payments in 2012 and 2013. *See* Ex. A. On or about December 29, 2014, Wells Fargo responded to the 2014 QWR, a copy of which is attached (*sans* exhibits) as **Exhibit B**, and stated, *inter alia*, that at the time the Foreclosure Action was filed, the loan was due for the January 1, 2012 payment and is currently due for the February 1, 2013 payment. *See* Ex. B.

On or about April 21, 2015, a non-jury trial was held in the Foreclosure Action, at which time the Foreclosure Action was involuntarily dismissed. *See* Am. Compl. at ¶ 12. Approximately six months later, on or about October 5, 2015, Wells Fargo sent Plaintiffs an acceleration letter (the "2015 Demand Letter"), informing Plaintiffs that their loan is delinquent and that in order to bring the loan current, they must remit $104,997.39. *See* Am. Compl. at ¶ 13. A copy of the 2015 Demand Letter is attached as **Exhibit C.**

On or about October 20, 2015, following receipt of the 2015 Demand Letter, Plaintiffs, through counsel, sent Wells Fargo a second Qualified Written Request (the "2015 QWR"). *See* Am. Compl. at ¶ 14. A copy of the 2015 QWR (*sans* exhibits) is attached as **Exhibit D**. In their 2015 QWR, Plaintiffs state that Wells Fargo "failed to properly investigate and correct the error

---

[3] Plaintiffs make repeated references to the Foreclosure Action, the 2014 and 2015 Qualified Written Requests, and related documents in the Amended Complaint. *See, e.g.,* Am. Compl. at ¶¶ 8 - 15, 19, 25, 27 – 30, and 38 - 40. Documents which are not attached to the pleadings, yet are referenced therein, "may be considered on a motion to dismiss when the documents are central to the claim and their authenticity is not in question." *See SFM Holdings, Ltd. v. Banc of Am. Securities, LLC,* No. 06-80652-CIV, 2007 WL 7124464 (S.D.Fla Feb. 12, 2007), citing *Day v. Taylor,* 400 F.3 d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt,* 304 F. 3d 1125, 1134 (11th Cir. 2002) (stating that the 11th Circuit has adopted the "incorporation by reference" doctrine, "under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed")).

in response to the [2014 QWR]," in that the amount sought in the 2015 Demand Letter "appears to include all amounts claimed in the original failed foreclosure." *See* Am. Compl. at ¶ 13 and Ex. D.

On or about October 22, 2015, a mere two days after sending the 2015 QWR, Plaintiffs filed a Complaint for Damages (the "Complaint") [DE 1-1] against Wells Fargo in connection with the 2014 QWR and 2015 QWR, in a case styled *Loris B. Ranger and George Gordon v. Wells Fargo Bank, N.A., d/b/a America's Servicing Company,* Case No. 15-18735 CACE 25, Seventeenth Judicial Circuit of Florida. In their Complaint, Plaintiffs alleged causes of action for a) violation of Florida's Consumer Collection Practices Act ("FCCPA"), F.S. § 559.72; b) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601; and c) negligence, *per se.*

Following the deposition of Wells Fargo's Corporate Representative, Plaintiffs filed their Motion for Leave to File an Amended Complaint [DE 29] to add a claim for common law conversion. On or about November 22, 2016, this Court entered an Order Granting Motion to Amend Complaint [DE 43], and on or about November 28, 2016, Plaintiffs filed their Amended Complaint for Damages (the "Amended Complaint") [DE 44].

### III.   STANDARD OF REVIEW

While a Court must view the facts in the light most favorable to a plaintiff when ruling on a motion to dismiss for failure to state a claim, a plaintiff is required to plead "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at

570). The Court may grant a motion to dismiss where, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993).

## IV. ARGUMENT

### I. Plaintiffs Do Not State a Claim for Illegal Consumer Collection Under Florida Statute § 559.72(9)

Plaintiffs allege vague and conclusory violations of the Florida Consumer Collections Practices Act ("FCCPA"), § 559.72(9), Fla. Stat. However, a court will not enter judgment under the FCCPA "without more than the conclusory allegations of a plaintiff." *Cooper v. Litton Loan Servicing*, 253 B.R. 286, 290 (Bankr.N.D.Fla. 2000). Here, Plaintiffs allege that they "placed [Wells Fargo] on express notice that [Wells Fargo's] allegations that [Plaintiffs] failed to make payment due January 1, 2012, and all subsequent payments after this date, were absolutely not true…However, [Wells Fargo] continues to attempt to collect the amount of their mortgage account balance including the charges placed in error. By doing so, [Wells Fargo] is attempting to collect a debt that it knows is not legitimate," in violation of § 559.72, Florida Statutes. *See* Am. Compl. at ¶ 19.

To the extent Plaintiffs assert that Wells Fargo violated the FCCPA by bringing the Foreclosure Action, under Florida law, a mortgage foreclosure action is not a collection of a debt under the FCCPA.[4] As a matter of law, a foreclosure action is the pursuit of a security

---

[4] Moreover, Wells Fargo's actions in bringing the Foreclosure Action were protected under the litigation privilege. "The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin. 'Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding.'" *Gaisser v. Portfolio Recovery Associates, LLC*, 571 F. Supp. 2d 1273, 1279-80 (S.D.Fla. 2008) (citing *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007). The act of filing a lawsuit clearly relates to a judicial proceeding and thus cannot form the basis of an FCCPA

5

interest…it does not constitute collection of a debt. *See Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1360 (M.D.Fla. 2007) aff'd, 288 Fed. Appx. 571 (11th Cir. 2008) (mortgage foreclosure action is not a "debt collection" under the FCCPA); *see also, Diaz v. Florida Default Law Grp, P.L.*, No. 3:09-cv-524-J-32MCR, 2011 WL 2456049, at *4 (M.D.Fla. 2011) (recognizing the foreclosure process does not constitute debt collection activity).

The reason behind this holding is that payment of funds is not the object of the foreclosure action but, rather, the lender is foreclosing its interest in the property. *See again, Trent*, 618 F. Supp. 2d at 1361. Other courts have recognized this distinction, as well. *See Hulse v. Ocwen Fed. Bank, FSB,* 195 F. Supp. 2d 1188, 1204 (D.Or. 2002) (foreclosing on a trust deed is distinct from the collection of the obligation to pay money); *Gray v. Four Oak Court Ass'n, Inc.*, 580 F. Supp. 2d 883, 888 (D.Minn. 2008) (a mortgage foreclosure is the enforcement of a security interest; it does not constitute the "collection of any debt"); *Chomillo v. Shapiro, Nordmeyer & Zielke, LLP*, Civ. No. 06-3103 (RHK/AJB), M2007 WL 2695795, at *6 (D.Minn. Sept. 12, 2007) (enforcers of security interests are not "debt collectors" under FDCPA, other than for §1692f(6)); *Acosta v. Campbell,* No. 6:04CV761 Orl28DAB, 2006 WL 3804729, at *4 (M.D.Fla. 2006) aff'd, 309 Fed. Appx. 315 (11th Cir. 2009) (giving serious consideration to the interpretation for FDCPA by the Federal Trade Commission, which determined filing a lawsuit is not "in collection of a debt" because the FDCPA provides that, in the event of dispute, a creditor *may still take legal action* but must cease other collection efforts); *Brown v. Morris*, 243 Fed. Appx. 31 (5th Cir. 2007) (court recognizes that a foreclosure is not *per se* FDCPA debt collection).

---

claim. *See id.* (dismissing an FCCPA claim based upon Defendants' filing of a time-barred suit against Plaintiff).

FTL 111022225v1

In fact, nearly every court that has addressed the question of whether a mortgage foreclosure constitutes the collection of a debt has held that foreclosing on a mortgage is not a debt collection activity. *Beadle v. Haughey,* No. Civ.04-272-SM, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005) (unpublished opinion) (citing *Hulse,* 195 F. Supp. 2d at 1203-04) (mortgage foreclosure does not constitute debt collection activity); *Rosado v. Taylor,* 324 F. Supp. 2d 917, 924 (N.D.Ind. 2004) (15 U.S.C. § 1692a(6) distinguishes security enforcement and debt collection, provides that security enforcement activities fall outside of the FDCPA because they are not debt collection practices); *Heinemann v. Jim Walter Homes, Inc.,* 47 F. Supp. 2d 716, 722 (N.D.W.Va. 1998), aff'd, 173 F. 3d 850 (4th Cir.1999) (foreclosing on property pursuant to a deed of trust does not fall within the terms of the FDCPA).

Notwithstanding that the majority of the above cases specifically refer to the Fair Debt Collection Practices Act ("FDCPA"), Florida Courts regularly rely on the rationale espoused in FDCPA cases and apply same with equal force to FCCPA cases. *See again, Trent*, 618 F. Supp. 2d at 1361. In fact, §559.77(5) of the FCCPA provides that, when applying the provisions of the FCCPA, great weight shall be given to the interpretations of the federal courts relating to the federal Fair Debt Collection Practices Act. *Id.; see also, Beeders v. Gulf Coast Collection Bureau, Inc.*, 8:09-cv-00458-EAK-AEP, 2010 WL 2696404 (M.D.Fla. 2010), aff'd, 432 Fed. Appx. 918 (11th Cir. 2011) (courts looked to the FDCPA for definitional guidance in those cases where FCCPA was silent on the issue.)

Based on the foregoing, Plaintiffs have failed to state a claim for violation of the FCCPA as a matter of law, and Count I of the Amended Complaint should be dismissed, with prejudice.

**II.     Plaintiffs Fail to State a Claim Under RESPA**

Count II of the Amended Complaint purports to assert a claim for violation of Section 2601 of RESPA and 12 C.F.R. § 1024.35(e) by alleging that Wells Fargo, "[i]nstead of complying with its unambiguous obligation under RESPA and investigating and correcting the errors on [Plaintiffs'] account,…willfully refused to undertake any investigation or make any corrections, thereby violating [Wells Fargo's] express obligations under 12 C.F.R. § 1024.35(e)…and the related provisions of [RESPA]." *See* Am. Compl. at ¶ 31.  Plaintiffs further conclusorily allege that they "have been damaged and therefore[] are entitled to an award of actual damages." *Id.* at ¶ 32.  Plaintiffs' alleged damages include "attorney's fees related to legal services rendered in connection with the failed foreclosure lawsuit[5] and their efforts to invoke the RESPA error resolution procedures…finance charges and interest that flow from the failure to properly credit [Plaintiffs'] payments, damage to their credit ratings and[] emotional distress arising from the unjustified collection activity, unjustified foreclosure lawsuit, and unjustified risk of losing their home." *Id.*  Plaintiffs' summary allegations, however, are simply not true and do not state a claim for which relief may be granted.

"Section 2605 of RESPA governs the servicing of mortgage loans and administration of escrow accounts." *Hudgins v. Seterus, Inc.*, Case No. 16-cv-80338-BLOOM/Valle, 2016 WL 3636859 *1, 2 (S.D.Fla. June 29, 2016) (internal quotations omitted).  Plaintiffs claim that Wells Fargo violated RESPA by failing or refusing to comply with Section 1024.35(e) of Regulation X, which provides that a servicer must respond to "a notice of error by either:  (A) [c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction…; or (B) [c]onducting a reasonable investigation and providing the borrower

---

[5] Upon information and belief, Plaintiffs have already recovered their attorneys' fees and costs incurred in connection with defending the Foreclosure Action.

8

with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination…" *See* 12 C.F.R. § 1024.35(e)(1)(i)(A) and (B).

For Plaintiffs' claim to survive a motion to dismiss, the Complaint "must sufficiently allege that 1) Defendant is a loan servicer; 2) Defendant received a QWR [(Qualified Written Request)] from Plaintiff; 3) the QWR relates to [the] servicing of [the] mortgage loan; 4) Defendant failed to respond adequately; and 5) Plaintiff is entitled to actual or statutory damages." *Hudgins*, 2016 WL 3636859 at *3 (internal quotations omitted).  Plaintiffs do not and cannot sufficiently allege several of these elements.

  A. <u>Plaintiffs Do Not And Cannot Adequately Allege The Fourth and Fifth Elements Of A RESPA Claim</u>

There is no question that Wells Fargo responded to the 2014 QWR within the 30 business day timeframe set forth in Regulation X.  *See* 12 C.F.R. § 1024.35(e)(3)(i)(C).  As shown by Exhibit A, Wells Fargo received the 2014 QWR on November 7, 2014 and responded 22 business days later on December 9, 2014, well within the 30-day timeframe set forth in Section 1024.35.  *Id.; see also* Ex. A and B.  Accordingly, in the event Plaintiffs are claiming that Wells Fargo violated RESPA based upon the timeliness of Wells Fargo's response to the 2014 QWR, they are unable to do so.  Further, with regard to the 2015 QWR, attached as Exhibit C, same was received by Wells Fargo on October 23, 2015, and there was no opportunity for Wells Fargo to respond, prior to the filing of Plaintiffs' Complaint the prior day, October 22, 2015.  *See* Ex. E and DE 1-1.

Similarly, and contrary to Plaintiffs' summary allegation, Wells Fargo's response to the 2014 QWR sufficiently acknowledges and responds to the requests set forth in the 2014 QWR.

9

In the response, Wells Fargo acknowledges that at the time the Foreclosure Action was filed, Plaintiffs' account was due for the January 1, 2012 payment, and all months subsequent. *See* Ex. B. The response further goes on to say that Plaintiffs' account is currently due for February 1, 2013, which takes into account the payments made during the course of the Foreclosure Action and initially placed into suspense. *Id.*

Even if Plaintiffs are able to demonstrate a violation of RESPA, which Wells Fargo expressly denies, they must still plead entitlement to actual or statutory damages to avoid dismissal. *Eveillard v. Nationstar Mortg., LLC*, Case No. 14-CIV-61786, 2015 WL 127893 *1, 8 (S.D.Fla. Jan. 8, 2015) (dismissing RESPA claim with prejudice). As a matter of law, Plaintiffs cannot meet this burden and thus, the Amended Complaint must be dismissed, with prejudice.

Count II of the Amended Complaint summarily alleges that Plaintiffs suffered "actual damages, including statutory damages,…attorneys' fees related to legal services rendered in connection with the failed foreclosure lawsuit[6] and [Plaintiffs'] efforts to invoke the RESPA error resolution procedures (including sending a second Notice of Error to [Wells Fargo])[,]…finance charges and interest that flow from the failure to properly credit [Plaintiffs'] payments, damage to their credit ratings and[] emotional distress arising from the unjustified collection activity, unjustified foreclosure lawsuit, and unjustified risk of losing their home." *See* Am. Compl. at ¶ 32. However, there could be no violation of RESPA before Wells Fargo received the 2014 QWR, since that was the initial request for information. As a result, any expenses incurred by Plaintiffs *prior to* Wells Fargo's response to the 2014 QWR do not constitute actual damages as a matter of law. *See Graham v. Ocwen Loan Servicing, LLC*, Case

---

[6] *See* fn 5, *supra.*

10

No. 16-80011-CIV-COHN/SELTZER, 2016 WL 1573177 *1, 3 (S.D. Fla. Apr. 19, 2016) (holding that any expenses incurred before the loan servicer responded to a qualified written request could not be recovered, because they were not incurred "as a result of" an inadequate response). Additionally, upon information and belief, Plaintiffs have already recovered their attorneys' fees and costs, incurred in connection with defending the Foreclosure Action, therefore, they are not entitled to a double recovery. Finally, Wells Fargo was not even afforded an opportunity to respond to the 2015 QWR, as this suit was filed the day before Wells Fargo received same. *See* Ex. C and D.

Because there is nothing in the Amended Complaint to link the alleged actual damages directly to Wells Fargo's alleged violation of RESPA or to any harm allegedly suffered directly by Plaintiffs, Count II of the Amended Complaint should be dismissed, with prejudice. *See Paschette v. Wells Fargo Bank, N.A.*, No. 6:11-cv-442-Orl-31GJK, 2011 WL 2470314, * 1, 3 - 4 (M.D.Fla. June 21, 2011) (dismissing RESPA claim with prejudice). *See also Hopson v. Chase Home Fin., LLC*, 14 F. Supp. 3d 774, 788 (S.D. Miss. 2014); *Malally v. BAC Home Loan Servicing, LLC,* No. 3:10-CV-0074-JTC-JFK, 2010 WL 5140626 *1, 9 (N.D.Ga. Oct. 8, 2010) ("Plaintiff does not allege how the failure to respond to the QWR caused her harm . . . [s]uch a pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure to comply with RESPA has caused them actual harm") (citation and internal quotations omitted).

Just as Count II of the Amended Complaint fails to establish any entitlement to actual damages, this count fails to establish any entitlement to statutory damages. Here, Plaintiffs summarily allege that "[g]iven [Wells Fargo's] persistent failure to adequately respond to RESPA/Regulation X correspondence from [Plaintiffs][] and other similar[ly] situated borrowers

11

who were either in default, or regarded by [Wells Fargo] as being in default, it is reasonable to infer that [Wells Fargo] has therefore engaged in a pattern and practice of non-compliance with its related obligations under RESPA." *See* Am. Compl. at ¶ 34. Plaintiffs, however, fail to allege any facts in support of these allegations and instead rely solely upon their allegation that Wells Fargo's "failure to comply with its obligations under RESPA is not an isolated incident, but the consequence of systemic deficiencies within [its] mortgage servicing operations." *Id.* at ¶ 33. Courts have repeatedly held that allegations, such as those made by Plaintiffs, are insufficient as a matter of law to establish the "pattern and practice" of non-compliance required to award statutory damages under RESPA and have dismissed lawsuits on that basis. *See Meeks v. Ocwen Loan Servicing, LLC,* Case No. 16-cv-81003-BLOOM/Valle, 2016 WL 3999570 *1, 6-7 (S.D.Fla. July 26, 2016); *Porciello v. Bank of Am., N.A.*, No. 8:14-CV-1511-T-17AEP, 2015 WL 899942 *1, 3 (M.D.Fla. Mar. 3, 2015) ("As a matter of law, the failure to respond to two QWR's is insufficient to establish a pattern and practice of non-compliance with the requirements of RESPA"); *Eveillard*, 2015 WL 1191170 at *12 ("a single event . . . does not a pattern make"); *Roach v. Bank of Am. Corp.*, No. 3:14-cv-703-J-39JBT, 2014 WL 7771739 *1, 2 (M.D.Fla. Dec. 9, 2014) (dismissing RESPA claim because two RESPA violations is insufficient to establish a "pattern or practice of noncompliance"); *Hayes v. U.S. Bank Nat'l Ass'n, as Trustee,* No. 13-80610-CIV, 2014 WL 2938534 *1, 2 (S.D.Fla. June 30, 2014) (dismissing RESPA claim). Consequently, Count II of the Amended Complaint fails as a matter of law and should be dismissed, with prejudice.

**III.    Plaintiffs Have Failed to State a Claim for Negligence** *Per Se*

Plaintiffs allege that a) Wells Fargo, "as a mortgage servicer, has an express duty pursuant to RESPA and Regulation X to reasonably investigate potential errors on the mortgage

12

loans it services when the borrower brings those errors to [Wells Fargo's] attention"; b) Wells Fargo "also has a duty to investigate potential errors on [Plaintiffs'] account…and properly handle and account for [Plaintiffs'] mortgage payments"; c) Wells Fargo "breached its duties owed to [Plaintiffs] when it failed to conduct a reasonable investigation in response to either of [Plaintiffs'] Notices of Error[7]"; and d) "[a]s a result of [Wells Fargo's] negligence, [Plaintiffs] have been damaged."  See Am. Comp. at ¶¶ 36 – 38, 42.

Negligence *per se* is a violation of "any…statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." See *deJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973), citing 65 C.J.S. Negligence § 19(3).  The elements of a claim for negligence *per se* are: "(1) a violation of a regulation; (2) causing a harm that the regulation was intended to prevent; and (3) the injured person is a member of the class intended to be protected by the regulation."  See *Lanza v. Schriefer*, Case No. 09-20834-CIV, 2010 WL 2754327 (S.D.Fla. Jul. 12, 2010), citing *Swoboda v. United States,* 662 F. 2d 326, 329 (5th Cir. 1981) (setting forth elements of federal claim of negligence *per se*) and *de Jesus,* 281 So. 2d at 201 (setting forth elements of negligence *per se* in Florida).

Here, Plaintiffs fail to state a claim for negligence *per se* because they have not alleged in Count III which specific statute(s) provide them with a private right of action, and RESPA does not create an express or implied private right of action.  See *Aloua v. Aurora Loan Servs., LLC*, Case No. 2:09-CV-00207-KJD-RJJ, 2010 WL 2555648, at *4 (D.Nev. June 23, 2010).  Further, Plaintiffs fail to meet the heightened pleading requirement of Federal Rule of Civil Procedure 8, requiring them to show why they are entitled to the relief they are seeking.  Notably absent from

---

[7] Wells Fargo received the 2015 QWR the day *after* this action was filed.  See Ex. D and DE 1-1.

the Amended Complaint is "*any* allegation that Plaintiffs belonged to a class of persons intended to be protected by the regulations or that Plaintiff[s] suffered the kind of harm that the regulations were intended to prevent." (emphasis added)  *See Lemma Insur. (Eur.) Co., Ltd. v. Rumrunner Sport Fishing Charters, Inc.*, No. 8:11-cv-2110-T-33TBM, 2012 WL 254134 (M.D.Fla. Jan. 27, 2012) (finding that negligence *per se* is a proper cause of action, however, its necessary elements were not properly pleaded).

Based on the foregoing, Plaintiffs' negligence *per se* claim fails and must be dismissed.

**IV.    Plaintiffs Do Not State a Claim for Common Law Conversion**

Plaintiffs' claim for common law conversion fails as a matter of law and must be dismissed, with prejudice. *See Pathway Fin. v. Miami Int'l Realty Co.*, 588 So. 2d 1000, 1004 (Fla. 3d DCA 1991) (plaintiff could not, as a matter of law, state a claim for civil theft or conversion based upon allegations that bank received monthly payments to which it was not entitled and converted the funds to its own use in derogation of the plaintiff's rights). In Count IV, Plaintiffs allege that rather than immediately applying the purported payments made by Plaintiffs (subsequent to the foreclosure referral, and while the Foreclosure Action was pending), Wells Fargo violated 12 C.F.R. § 1026.36(c) by placing Plaintiffs' payments in a suspense account.  *See, generally,* Am. Compl. at ¶¶ 48 - 50.  Plaintiffs further allege that, "[a]t no time was [Wells Fargo] authorized by [Plaintiffs] to maintain possession and control over their funds in [] suspense without crediting those payments to their mortgage loan account." *Id.* at ¶ 56.

"Conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Nat'l Union Fire Ins. Co. of Pa. v. Carib Aviation, Inc.,* 759 F. 2d 873, 878 (11th Cir. 1985) (quoting *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman), Ltd.,* 450 So. 2d 1157, 1160–61 (Fla.Dist.Ct.App. 1984)) (internal quotation marks omitted). "Conversion

14

*cannot arise* from the defendant's exercise of a legal right over the property," to be discussed more fully, *infra*. *See Clifton v. Nationstar Mortg., LLC,* C/A No. 3:12-cv-02074-MBS, 2015 WL 1549108, *3 (D.S.C. Apr. 6, 2015) (emphasis added). "In order to establish a claim for conversion of funds under Florida law, a plaintiff must demonstrate, by a preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." *See Iberiabank v. Coconut 41, LLC*, Case No. 2:11-cv-321-FtM-29DNF, 2013 WL 6061883 (M.D.Fla. 2013) (quotation omitted). In Count IV of the Amended Complaint, Plaintiffs fail to allege the first element of a claim for conversion of funds, *i.e.,* specific and identifiable money. Rather, they conclusorily allege that Wells Fargo converted payments made "subsequent to the foreclosure referral and while the [Foreclosure Action] was pending during the years 2012 and 2013." *See* Am. Compl. at ¶ 48. However, Plaintiffs do not specifically allege, *inter alia,* when said payments were made or the specific and/or aggregate amount of said payments.

Further, Plaintiffs fail to allege the second and third elements of conversion, *i.e.,* that they were entitled to possess the payments sent to Wells Fargo and that Wells Fargo performed an unauthorized act, which deprived Plaintiffs of their payments/property. To the contrary, pursuant to ¶ 1 of the Mortgage (a copy of which is attached hereto as **Exhibit E**), which forms the basis of the Foreclosure Action *and* this lawsuit, "Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender **is not obligated to apply such payments at the time such payments are accepted**…**Lender may hold** such unapplied funds until Borrower makes payment to bring the Loan current. If

15

Borrower does not do so within a reasonable period of time, Lender shall either **apply such funds** or return them to Borrower." *See* Ex. E (emphasis added).

Consequently, Wells Fargo **cannot be held liable** for conversion, because it placed said funds - which were less than the total amount due to reinstate - in a "suspense" account, even though Plaintiffs intended those funds to be immediately applied to their account. *See Clifton,* 2015 WL 1549108 at *3 (holding that "[b]ecause Wells Fargo cannot convert funds that it is authorized to possess, Plaintiff's claim for conversion fails as a matter of law"); *see also Davis v. Bank of Am. Corp.*, Civil No. 1:10-cv-23-HSO-JMR, 2013 WL 141150 (S.D.Miss. Jan. 11, 2013) (holding that, "pursuant to the terms of the [Mortgage], [Bank of America] was within its rights to [accept and retain partial payments]. Plaintiff's claim that [Bank of America] did not timely apply his payments and unlawfully held partial payments[] should be dismissed.")

"A mortgagor does not have a right to possess payments made under the loan." *See Bennett v. One West Bank*, No. 10cv1884-BTM(RBB), 2011 WL 2493699, *7 (S.D.Cal. Jun. 23, 2011). Here, Plaintiffs were contractually obligated to make payments under the loan. *See* Ex. E; *see, generally, Jones v. Bank of Am. Corp.*, No. 4:09cv162, 2010 WL 6605789 (E.D.Va. Aug. 24, 2010) (Borrower does not have a right to the immediate possession of funds representing taxes and insurance, because she has a contractual obligation to pay those amounts); *Newgent v. Wells Fargo Bank, N.A.*, No. 09cv1525 WQH (WMC), 2010 WL 761236 (S.D.Cal. Mar. 2, 2010) ("Accepting payment a Plaintiff owes on a delinquent mortgage cannot be the basis of a conversion claim against a lender.").

Finally, Plaintiffs fail to and cannot allege the fourth element of a claim for conversion, *i.e.,* demand for return of the money and a refusal to do so, and have failed to allege that a) they demanded a return of said funds/purported payments; and b) Wells Fargo refused to return same.

Even if Plaintiffs had timely and properly demanded a return of the purported payments, which Wells Fargo expressly denies, Wells Fargo would still not be liable for conversion, because the purported payments were sums due to Wells Fargo under the Mortgage. *See Newgent*, 2010 WL 761236 at 6. Moreover, pursuant to the *express terms* of the Mortgage, Wells Fargo was entitled to either a) place said funds in suspense; or b) return said funds to Plaintiffs. *See* Ex. A at ¶ 1. Wells Fargo, as was its prerogative, opted for the former.

Because the claim for conversion was not pleaded with the requisite specificity and, more importantly, because none of the elements of conversion have been pleaded, Count IV of the Amended Complaint should be dismissed, with prejudice.

## V.     CONCLUSION

Based on the reasons set forth above, Wells Fargo respectfully requests that the Court dismiss the Amended Complaint for Damages, with prejudice, and grant such other relief as the Court deems just and appropriate.

Dated: December 15, 2016.

Respectfully submitted,

s/ Denise M. Rosenthal
Michele L. Stocker
Florida Bar No. 0044105
stockerm@gtlaw.com
smithl@gtlaw.com
FLService@gtlaw.com
Denise M. Rosenthal
Florida Bar No. 0154369
rosenthalde@gtlaw.com
FLService@gtlaw.com
GREENBERG TRAURIG, P.A.
*Attorneys for Wells Fargo Bank, N.A.*
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone:   (954) 765-0500
Facsimile:     (954) 765-1477

CASE NO. 15-62511-CIV-DIMITROULEAS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of December, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/ Denise M. Rosenthal

## SERVICE LIST

Jeffrey N. Golant, Esquire
Sean X. Foo, Esquire
The Law Offices of Jeffrey N. Golant, P.A.
1999 North University Drive
Suite 213
Coral Springs, FL 33071
jgolant@jeffreygolantlaw.com
sfoo@jeffreygolantlaw.com